# PD-1350-15

# In The Court Of Criminal Appeals Of Texas

---

## DUSTIN RYAN RHOADES

## V.

## THE STATE OF TEXAS

---

An Appeal from Cause No. 07-13-00319-CR in the Court of Appeals for the Seventh District of Texas at Amarillo and Cause No. 65,540-D in the 320TH Judicial District Court in and for Potter County, Texas, Honorable Don Emerson

---

## PETITION FOR DISCRETIONARY REVIEW BY APPELLANT DUSTIN RYAN RHOADES

---

RECEIVED IN
COURT OF CRIMINAL APPEALS

November 17, 2015

ABEL ACOSTA, CLERK

**JAMES E. WOOLDRIDGE**
ATTORNEY & COUNSELOR AT LAW
STATE BAR #24010492
600 S. Tyler Street
LB 12051
Amarillo, Texas 79101
(806) 418 8575
(806) 418 8576 FAX
j.e.wooldridge@att.net

**ATTORNEY FOR APPELLANT**

**Appellant Requests Oral Argument**

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:                DUSTIN RYAN RHOADES

APPELLEE:               STATE OF TEXAS

TRIAL JUDGE:          HONORABLE DON R. EMERSON
320TH JUDICIAL DISTRICT
Potter County Courts Building
501 S. Fillmore Street
Suite 4B
Amarillo, Texas 79101

ATTORNEY FOR APPELLANT
TRIAL & APPELLATE COUNSEL:  JAMES E. WOOLDRIDGE
ATTORNEY & COUNSELOR AT LAW
600 S. Tyler Street
Suite 1704
LB 12051
Amarillo, Texas 79101

ATTORNEY FOR APPELLEE
TRIAL COUNSEL:        THOMAS MCMILLIAN
ASSISTANT DISTRICT ATTORNEY
47TH Judicial District Attorney's Office
Potter County Courts Building
501 S. Fillmore Street
Suite 5A
Amarillo, Texas 79101

APPELLATE COUNSEL:    JOHN L. OWEN
ASSISTANT DISTRICT ATTORNEY
47TH Judicial District Attorney's Office
Potter County Courts Building
501 S. Fillmore Street
Suite 5A
Amarillo, Texas 79101

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL     i

TABLE OF CONTENTS     ii

INDEX OF AUTHORITIES     v

PETITION FOR REVIEW     1

STATEMENT OF THE CASE     2

STATEMENT OF PROCEDURAL HISTORY     3

STATEMENT OF JURISDICTION     4

ISSUES PRESENTED     5

STATEMENT OF FACTS     6

SUMMARY OF THE ARGUMENT     11

ARGUMENT     13

    ISSUE NUMBER ONE:     13

The Court of Appeals for the Seventh District of Texas erred by its disregard of precedent in favor of reversion to an overruled precedent, so as to deny Appellant standing to assert his right to Due Process or his right to be free from unreasonable seizure as a result of the commission of a crime by law enforcement officers seeking to ascertain his identity.

        ARGUMENT AND AUTHORITIES     13

        FACTS RELEVANT TO APPELLANT'S ISSUE #1     13

        RELEVANT STATUTES     15

        STANDARD OF REVIEW     16
          FOURTH AMENDMENT & ARTICLE I, § 9     16
          FIFTH AMENDMENT & ARTICLE I, § 19     17

        APPLICATION     18
          Code of Criminal Procedure Article 38.23.     18

*STARE DECISIS* 21

ISSUE NUMBER TWO: 24

The Court of Appeals for the Seventh District of Texas erred by its holding that an   allegation of Murder based on Deadly Conduct committed while committing Deadly Conduct, or alternatively that Deadly Conduct standing alone, or alternatively that Deadly Conduct without a specified further dangerous act, is sufficient to deny quashment of an indictment paragraph so alleging.

ARGUMENT AND AUTHORITIES 24

THE OFFENDING PARAGRAPH 24

ELEMENTS OF THE OFFENSE CHARGED 24

STANDARD OF REVIEW 25

APPLICATION 26

ISSUE NUMBER THREE: 29

The Court of Appeals for the Seventh District of Texas erred by its holding that any voluntary act shall suffice to imply voluntariness to the ultimate act alleged, such that an instruction on voluntariness shall not lie, no matter that evidence was adduced as to the involuntariness of shooting an individual from multiple sources of testimony.

ARGUMENT AND AUTHORITIES 29

STANDARD OF REVIEW 29

APPLICATION 30

ISSUE NUMBER FOUR: 34

The Court of Appeals for the Seventh District of Texas erred by its holding that the evidence in this matter was sufficient to sustain a conviction for Murder.

ARGUMENT AND AUTHORITIES 34

ELEMENTS OF THE OFFENSE CHARGED................34

STANDARD OF REVIEW................35

APPLICATION................37

PRAYER................41

CERTIFICATE OF SERVICE................42

CERTIFICATE OF COMPLIANCE................42

APPENDIX A................43

Opinion delivered by the Court of Appeals for the Seventh District of Texas................44

# INDEX OF AUTHORITIES

**BOOKS**

George E. Dix and Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* §§ 4.11-4.35 (2d ed. 2001)      *20*

**CASES**

*Adanandus v. State*, 866 S.W.2d 210 (Tex.Crim.App.1993)      30,31,37,38

*Alford v. State*, 866 S.W.2d 619 (Tex.Crim.App.1993)      30,31,37,38

*Baird v. State*, 379 S.W.3d 353 (Tex.App.-Waco 2012)
     *aff'd*, 398 S.W.3d 220 (Tex.Crim.App. 2013)      22

*Brooks v.* State, 323 S.W.3d 893 (Tex. Crim. App. 2010)      36

*Brown v. State*, 605 S.W.2d 572 (Tex.Crim.App. 1980)      21

*Brown v. State*, 955 S.W.2d 276, 280 (Tex.Crim.App.1997)      31,38

*Brown v. State,* 122 S.W.3d 794 (Tex.Crim.App.2003)      37

*Charles v. State*, 424 S.W.2d 909 (Tex.Crim.App.1968)      16,25,29,35

*Durio v. State*, 807 S.W.2d 876 (Tex.App.-Corpus Cristi 1991)      16

*Ex parte McIver*, 586 S.W.2d 851 (Tex.Crim.App.1979)      19

*Farmer v. State*, 411 S.W.3d 901 (Tex.Crim.App 2013)      32

*Garrett v. State*, 573 S.W.2d 543 (Tex.Crim.App.1978)      26

*Gearheart v. State*, 197 S.W. 187 (Tex.Crim.App.1917)      22

*George v. State*, 681 S.W.2d 43 (Tex.Crim.App.1984)      30

*Hardy v. State*, 963 S.W.2d 516 (Tex.Crim.App. 1997)      22

*Hartsfield v. State,* 305 S.W.3d 859 (Tex.App.-Texarkana 2010, pet. ref'd)      36

*Heiselbetz v. State,* 906 S.W.2d 500 (Tex. Crim. App. 1995)      36

*Higbie v. State,* 780 S.W.2d 228 (Tex.Crim.App.1989)                                      16

*Hooper v. State,* 214 S.W.3d 9 (Tex. Crim. App. 2007)                                    36,37

*In re S.B.,* 117 S.W.3d 443 (Tex.App.-Fort Worth 2003, no pet.)                            37

*In re Winship* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)                    17,26,30

*Jackson v. Virginia,* 443 U.S. 307 (1979)                                                 36

*Johnson v. State,* 673 S.W.2d 190 (Tex.Crim.App.1984)                                     37

*Laster v. State,* 275 S.W.3d 512 (Tex.Crim.App. 2009)                                     37

*Lawson v. State,* 64 S.W.3d 396 (Tex.Crim.App.2001)                                       26

*Lay v. State,* 359 S.W.3d 291 (Tex.App.-Texarkana 2012, no pet.)                          37

*Lowry v. State,* 692 S.W.2d 86 (Tex.Crim.App. 1985)                                  17,26,30

*Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997)                                       36

*Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684 (1961)                                         15

*Marin v. State,* 891 S.W.2d 267 (Tex. Crim. App. 1994)                                    22

*Mattias v. State,* 731 S.W.2d 936 (Tex.Crim.App.1982)                                     20

*McGlothlin v. State,* 896 S.W.2d 183 (Tex.Crim.App.1995)                                  21

*Miles v. State,* 241 S.W.3d 28 (Tex.Crim.App.2007)                                        20

*Payne v. State,* 33 S.W.3d 374 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd)            32

*Polk v. State,* 738 S.W.2d 274 (Tex.Crim.App.1987)                                        16

*Proctor v. State,* 967 S.W.2d 840 (Tex.Crim.App.1998)                                     22

*Rogers v. State,* 105 S.W.3d 630 (Tex.Crim.App.2003)                                    30,37

*Shaw v. State,* 243 S.W.3d 647 (Tex.Crim.App.2007)                                        31

*Smith v. State,* 542 S.W.2d 420 (Tex.Crim.App.1976)                                       16

*State v. Aguirre,* 5 S.W.3d 911 (Tex.App.-Houston [14th Dist.] 1999, no pet.)             21

*Tippitt v. State,* 41 S.W.3d 316 (Tex.App.-Fort Worth 2001, no pet.)     37

*Trujillo v. State,* 227 S.W.3d 164 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd)   30,37

*Washington v. State,* 417 S.W.3d 713 (Tex.Crim.App.2010)     28

*Wilson v. State,* 311 S.W.3d 452 (Tex.Crim.App.2010)     19,20,21

*Wolfe v. State,* 178 S.W.2d 274 (Tex.Crim.App.1944)     21

*Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407 (1963).     15

*Woodfox v. State,* 742 S.W.2d 408 (Tex.Crim.App.1987)     31

## CONSTITUTIONS

U.S. CONST. amend. IV     15

U.S. CONST. amend. V     16,25,29,35

U.S. CONST. amend. XIV     16,25,29,35

TEX. CONST. art. I, § 9     15

TEX. CONST. art. I, § 19     16,25,29,35

## RULES

TEX. R. APP. P. 44.2 (a)     16,17,26,36

## STATUTES

TEX. ALCOHOL & BEV. CODE ANN. § 106.02(a)     19

TEX. ALCOHOL & BEV. CODE ANN. § 106.05(b)(3)     19

TEX. CODE CRIM. PROC. ANN. art. 1.04     17,26,29,35

TEX.CODE CRIM. PROC. ANN. art. 2.13(a)     19

TEX.CODE CRIM. PROC. ANN. art. 37.09     27

TEX.CODE CRIM. PROC. ANN. art. 38.23(a)     15,17

TEX.CODE CRIM. PROC. ANN. art. 38.23(b)     17

TEX. HEALTH & SAFETY CODE ANN. § 481.062 18

TEX. HEALTH & SAFETY CODE ANN. § 482.002(b)(1) 18

TEX. HEALTH & SAFETY CODE ANN. § 483.041(c)(5) 18

TEX. HEALTH & SAFETY CODE ANN. §§ 463.011 18

TEX. HEALTH & SAFETY CODE ANN. §§ 463.013 18

TEX. PENAL CODE ANN. § 2.01 36

TEX. PENAL CODE ANN. § 2.03(c) 31

TEX. PENAL CODE ANN. § 2.03(d) 31

TEX. PENAL CODE ANN. § 2.03(e) 31

TEX. PENAL CODE ANN. § 6.01(a) 34

TEX. PENAL CODE ANN. § 6.02(a) 34

TEX. PENAL CODE ANN. § 6.03(a) 34

TEX. PENAL CODE ANN. § 6.03(b) 25,34

TEX. PENAL CODE ANN. § 6.03(c) 25,35

TEX. PENAL CODE ANN. § 6.03(d) 35

TEX. PENAL CODE ANN. § 7.02(a)(2) 19

TEX. PENAL CODE ANN. § 7.02(a)(3) 19

TEX. PEN. CODE ANN. § 12.32 2

TEX. PEN. CODE ANN. § 12.42 2

TEX. PENAL CODE ANN. §§ 16.02(c)(2) 18

TEX. PENAL CODE ANN. §§ 16.02(c)(8)(C) 18

TEX. PENAL CODE ANN. § 16.03 (c)(3) 18

TEX. PENAL CODE ANN. § 16.04(e)(4) 18

TEX. PENAL CODE ANN. § 16.05(c)(3)      18

TEX. PENAL CODE ANN. § 16.06(d)(2)      18

TEX. PENAL CODE ANN. § 19.02(b)(1)      2,34

TEX. PENAL CODE ANN. § 19.02(b)(3)      2,25,34

TEX. PENAL CODE ANN. § 19.04(a)      26,34

TEX. PENAL CODE ANN. § 19.05(a)      34

TEX. PENAL CODE ANN. § 22.05(a)      27

TEX. PENAL CODE ANN. § 22.05(c)      27

TEX. PENAL CODE ANN. § 30.05(c)      18

TEX. PENAL CODE ANN. § 31.11(b)(2)      18

TEX. PENAL CODE ANN. § 34.02(c)      18

TEX. PENAL CODE ANN. § 36.05(c)      18

TEX. PENAL CODE ANN. § 38.11(e)      18

TEX. PENAL CODE ANN. § 42.03(a)      18

TEX. PENAL CODE ANN. § 42.08(a)      18

TEX. PENAL CODE ANN. § 42.08(e)      18

TEX. PENAL CODE ANN. § 42.09(f)      18

TEX. PENAL CODE ANN. § 42.09(h)(B)      18

TEX. PENAL CODE ANN. §43.01(3)      15

TEX. PENAL CODE ANN. §43.01(4)      15

TEX. PENAL CODE ANN. §43.01(5)      15

TEX. PENAL CODE ANN. §43.02(a)(1)      15

TEX. PENAL CODE ANN. §43.02(b)      15

TEX. PENAL CODE ANN. §43.02(d)      19

TEX. PENAL CODE ANN. § 46.15(a)      18

TEX. PENAL CODE ANN. § 46.02      18

TEX. PENAL CODE ANN. § 46.03      18

TEX. PENAL CODE ANN. § 46.035(h-1)      18

TEX. PENAL CODE ANN. § 46.04(c)      18

TEX. PENAL CODE ANN. § 46.05(b)      18

TEX. PENAL CODE ANN. § 47.09(a)(3)      18

# PD-1350-15

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## DUSTIN RYAN RHOADES

## V.

## THE STATE OF TEXAS

An Appeal from Cause No. 07-13-00319-CR in the Court of Appeals for the Seventh District of Texas at Amarillo and Cause No. 65,540-D in the 320TH Judicial District Court in and for Potter County, Texas, Honorable Don Emerson

# PETITION FOR DISCRETIONARY REVIEW BY APPELLANT DUSTIN RYAN RHOADES

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS, AND TO THE HONORABLE JUSTICES OF SAID COURT:**

**COMES NOW Appellant,Dustin Ryan Rhoades,** and files this, his Petition for Discretionary Review, and requests that the Court of Criminal Appeals of Texas take the matters presented herein under review, and after deliberation reverse the judgment of the Court of Appeals for the Seventh District of Texas at Amarillo, and refer this cause back to the trial court in all things.

Appellant believes that oral argument would assist this Court in explication and disposition of the issues presented in this petition. Therefore, Appellant requests oral argument.

1

**STATEMENT OF THE CASE**

This is a Petition For Discretionary Review from a criminal appeal styled:  Dustin Ryan Rhoades v. State of Texas, Cause Number 07-13-00319-CR in the Court of Appeals, Seventh District of Texas, which was itself a direct appeal of a criminal matter styled: State of Texas v. Dustin Ryan Rhoades, Cause Number 65,540-D, in the District Court of Potter County, Texas, 320TH Judicial District, the Honorable Don R. Emerson, presiding.

A pre-trial hearing on Defendant's Motion To Quash And Exception To The Substance Of The Indictment was held on the 3RD day of September, 2013.  The Court denied said Motion To Suppress on the day of hearing and proceeded immediately to trial.  A trial by jury was held on the 3RD and 4TH days of September, 2013, whereupon Appellant was found guilty of the First Degree Felony offense of Murder.  TEX. PENAL CODE ANN. 19.02(b)(1);  TEX PENAL CODE ANN. 19.02(b)(3).  The jury then assessed Appellant's punishment at confinement for forty (40) years in the Texas Department of Criminal Justice, Institutional Division, on the 4TH day of September, 2012.  TEX. PENAL CODE ANN. 12.32;  TEX. PENAL CODE ANN. 12.42 (Vernon 2010).

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals for the Seventh Supreme Judicial District of Texas sitting at Amarillo affirmed the trial proceedings on the 15TH day of September, 2015, in a Memorandum Opinion from Chief Justice Brian Quinn and Justices James T. Campbell and Patrick Pirtle, authored by Justice James T. Campbell. No motion for rehearing was filed by the Appellant with the Court of Appeals.

The Court of Criminal Appeals granted an extension to the filing of a Petition for Discretionary Review until the 16TH day of November, 2015.

## STATEMENT OF JURISDICTION

Jurisdiction resides with this Court in that a state appellate court, to wit, the Seventh Court of Appeals, has decided an important question in a way that holds differently from a prior decision of another court of appeals or of the Court of Criminal Appeals on a question of law material to a decision of the case, and in which it appears that an error of law has been committed by the Seventh Court of Appeals, and that error is of such importance to the jurisprudence of the State of Texas that it requires correction.

# ISSUES PRESENTED

## ISSUE NUMBER ONE

Are an appellant's rights to Due Process and to be free from an unreasonable seizure violated by a court of appeals deliberate disregard of precedent of the Court of Criminal Appeals in favor of reversion to an earlier precedent overruled by the later precedent, such that law enforcement officers may be permitted with impunity to commit crimes in order to ascertain the identity of a suspect and then utilize information gained therefrom to secure a warrant for arrest and deny liberty thereby?

## ISSUE NUMBER TWO

Can an allegation that the commission of Deadly Conduct while in the course of committing Deadly Conduct raise an act beyond Manslaughter, to Murder, or alternatively, that Deadly Conduct standing alone, or alternatively, that an allegation of Deadly Conduct, without specification of a further act clearly dangerous to human life, is sufficient to maintain a charge of Murder?

## ISSUE NUMBER THREE

May a single preliminary voluntary act that does not comprise the ultimate act criminalized, conflate into the culpable mental state and the ultimate criminalized act, such that an instruction on voluntariness should not be given even though the issue of voluntariness is raised by multiple accounts?

## ISSUE NUMBER FOUR

May a finder of fact infer absent evidence concerning mental culpability when all evidence adduced at trial is to the contrary?

5

## STATEMENT OF FACTS

On June 7TH, 2012, police responded to a report of a shooting at the Westminster Apartments in Amarillo, Texas, whereupon they discovered one Deans Anderson lying on the floor of his apartment with a fatal gunshot wound to the face.

Sergeant Jason Riddlespurger, a detective with the Amarillo Police Department Special Crimes Unit testified that he was assigned as the lead investigator on this suspected homicide. R.R. 3:44-45. From information taken from the decedent's phone, Sergeant Riddlespurger identified a "Chocolate Cherry" as a person running an escort-type service that had been in contact with decedent shortly before decedent's demise. R.R. 3:46-47. In order to determine the identity of "Chocolate Cherry," an undercover operation was initiated that involved an undercover narcotics officer contacting "Chocolate Cherry" and setting up a pretend date, whereupon actually meeting, the subject was to be pulled aside and identified. The operation identified "Chocolate Cherry" as being in reality, Cree-Anna Shamell Dawn. R.R. 3:47-48. The operation, a prostitution sting, was under the planning of Lieutenant Bohannon, head of Special Crimes, in coordination with Lieutenant Leidtke, commander of the Narcotics Task Force. Pursuant thereto, Officer Morgan of the Task Force set up a date and met with Ms. Dawn. R.R. 3:49-50. The "sting" occurred at a now-defunct Amarillo restaurant called TGIF (Thank God It's Friday) on June 11TH, 2012. R.R. 3:83. As part of the sting, Officer Morgan and a Sergeant Clay were to make a recording of the interaction with Ms. Dawn, with Sergeant Clay listening to determine when an offer and acceptance for sex had been made. R.R. 3:50. Sergeant Riddlespurger testified that his operational partner Clay Rolan was informed by Sergeant Clay that an offer of sex for money had been made and Ms. Dawn was then arrested without warrant. R.R. 3:50-51. The offer for sex for money was made by Cree-Anna Dawn and Officer Morgan. R.R. 3:51. Sergeant Riddlespurger testified that he had personally reviewed the audiotape of the offer and acceptance for sex and confirmed that it involved Officer Morgan making an offer to the effect of taking Ms. Dawn up to his room for three hours to fulfill the agreement. R.R. 3:51. Sergeant Riddlespurger futher confirmed that all identification of Ms. Dawn and Dustin Rhoades came from her arrest without warrant on the

6

prostitution charge, that prior to the Dawn post-arrest interview, the Amarillo Police Department and Special Crimes did not know who Dustin Rhoades was in relation to the case (unidentified white male), and that all identification to lead to the arrest of Dustin Rhoades on a murder warrant was the product of Cree-Anna Dawn's prostitution arrest. R.R. 3:52.

Subsequent to Appellant's arrest on the murder warrant secured via the warrantless prostitution arrest of Cree-Anna Dawn, Sergeant Riddlespurger testified he was able to extract a confession, both oral and written, from Appellant, the written statement being entered at trial as State's Exhibit 133 and reading as follows:

"My name is Dustin Ryan Rhoades. My birthday is 1/30/85 and I am 27 years old. I have been living with my grandmother, Lucille Stone, at 41" -- I'm sorry -- "400 S.W. 15th, #214, Amarillo, Texas. I have a girlfriend named Kristie Ortiz. On Thursday, June 7, 2012, I got a phone call from a girl named Cree. I have known Cree for about a month and I met her at a friend named Chris's house. Cree told me that a guy attempted to rape her and he took her money. She asked me to come pick her up and take her to try and get her money from the guy. I was driving Kristie's maroon Chrysler or Dodge Grand Caravan minivan. I drove to Chris's house at 16th and S. Jackson. Cree was outside waiting and she got in the van with me. I drove us to the apartments at Coulter and I-40. Cree told me where to go and I parked the van next to the street. We left both sliding doors open. I followed Cree to an apartment. I was carrying a .357 black revolver in my hand when we walked up to the apartment. Cree knocked on the door while I stood to the side. The man inside opened the door. He told Cree," in quotations, "'Did you bring a condom this time so I can do that shit again?'" End quotation. "I stepped up to the door with my gun pointed at the man. I told the man to give my girl the money and to empty his pockets. He said," quote, "'I ain't got no pockets.'" End quote. "I told the man I was trying to be nice. He said to tell the girl to come in so he could get his money's worth. He then said," quote, "'Kill me, kill me,'" -- end quote. Again, quotations, "'because I would do it again.'" End quotation. "He kept saying," quote, "'Kill me,'" -- end quote, "and then stepped towards me. I twisted and pulled the trigger. I didn't mean to. The shot hit the man in the face. He was in slow motion and

fell to the ground. I was sorry and wanted so bad to help him. Cree had to come to me and pulled me away saying," quote, "'Come on.'" End quote. "We both ran to the van. She got in the passenger side and I got in the driver's seat. I drove the van north on Coulter and then east onto I-40. I took Cree back to Chris's house and let her out. I drove around for several hours and eventually went to my grandma's house. The next day or two I told Kristie what happened. A couple of days ago, I was at a corner in North Amarillo. It was an area with crack dealing and prostitution. I pulled the car up to a black African dude and sold him my .357 revolver for $75. I do not know who the guy was. I had only owned the gun a couple of days before the shooting. I had bought it from an unknown guy for $150. I bought it for self protection. I wish I could take the man's place. I swear that the above statement is true and correct to the best of my knowledge."
R.R. 3:62-64.

Sergeant Riddlespurger testified that, as to Appellant's oral statement, Appellant had stated that the decedent "reached toward Appellant" just before Appellant's weapon discharged. R.R. 3:93-94. Kristie Ortiz, Appellant's girlfriend, testified in response to questioning as to what Appellant had told her about June 8th of 2012, the night in question, (T)hat he took Cree-Anna to the victim's house, apartment, to go get some money, and that they started arguing and that he pulled the gun out trying to scare him, and that she pulled his arm away to quit, and then the gun went off. R.R. 4:51-52.

State's witness Nathan Shaw testified that he was living, and present, at the Westminster Apartments, with an address of 2415 S. Coulter on June 7TH, 2012. R.R. 3:12. Specifically, Mr. Shaw resided in Apartment 224. R.R. 3:13. On the evening in question, Mr. Shaw stated he heard a gunshot from inside his apartment, then saw Appellant running behind a black female toward a red van, holding a small black pistol. R.R. 3:14. Later, Mr. Shaw altered his testimony to say he first saw Appellant standing in a doorway. R.R. 3:15, 23-24. Still later, he altered his testimony again to say that he did not see Appellant and the black female in the doorway, but maybe three or four feet

8

outside the doorway. R.R. 3:25. Mr. Shaw was quite clear in his testimony that he did not see what transpired at the doorway where he saw Appellant, and that he did not see Appellant and the black female approach the decedent's doorway. R.R. 3:24.

Sergeant Riddlespurger testified that Special Crimes was unable to retrieve any video that showed any interaction between Appellant, Ms. Dawn, and the decedent. R.R. 3:75. Further, Special Crimes located only two persons, Nathan Shaw and someone named LaVigne, who witnessed portions of the event, but neither witnessed the interaction between the two and the actual shooting. R.R. 3:76. No person named LaVigne testified at Appellant's trial. R.R. 1:7.

Juan Cerda was identified as being the third person in the van used by Appellant and Ms. Dawn to travel to the site of the incident. R.R. 3:82. Juan Cerda did not see the shooting. R.R. 3:83. Cree-Anna Dawn also did not see the final interaction between Appellant and the decedent, as evidenced by the following testimony given by Sergeant Riddlespurger relative to her interrogations:

(By Mr. Wooldridge)

Q. Cree-Anna Dawn said that she was running away and heard the shooting as she left Dustin standing with the gun at the door.

Q. So she just assumed that Dustin had shot him?

A. Yes.

Q. In fact, you were never able to identify anyone other than Dustin Rhoades that was witness to the actual shooting and the immediate events prior to that shooting; is that correct?

A. Correct.

R.R. 3:97.

Q. And she says that she was as far away as perhaps the next apartment door before she heard the shot?

A. Correct.

Q. And she does say that Deans Anderson was getting argumentative and in -- or in a way that is consistent with Mr. Rhoades' statement?

9

A. Yes.

Q. But in any statement that she's given, she -- she never states that she sees the actual shooting?

A. Correct.

Q. She always makes clear that she has left, she says, before the actual event can happen?

A. That's correct.

Q. And neither she nor anyone else has provided any testimony, other than Dustin Rhoades, as to Deans Anderson's last moves?

A. Correct.

Q. And Mr. Cerda was unclear as to where he was, but he finally decided he was in the van when he heard the shot?

A. Yes, sir.

R.R. 3:99-100.

**ISSUE NUMBER ONE**

In a prosecution for Murder, police sought an escort identified from the decedent's phone. In order to be able to arrest her, the police committed the crime prostitution, i.e., made an offer of sex in return for money, which the escort (ultimately, co-defendant) accepted and thereupon was promptly arrested. The escort was then interrogated and implicated Appellant. All information leading to the identity of Appellant was garnered from the illegal arrest of the co-defendant, as was the warrant for Appellant's arrest. Subsequent to Appellant's arrest, he gave the only information presented to the jury concerning his involvement in the alleged offense. Per Article 38.23, all evidence should have been suppressed identifying Appellant as the perpetrator of the offense, and his confessions.

**ISSUE NUMBER TWO**

Murder may be predicated upon the commission of an act, in furtherance of a separate felony, that is clearly dangerous to human life and results in the death of another person, but not if it is Manslaughter or a lesser included thereof. Paragraph Two of the Indictment in this case either alleged that felony Deadly Conduct (discharging a firearm) was committed while committing misdemeanor Deadly Conduct (pointing a firearm - presumed reckless), or that misdemeanor Deadly Conduct was committed and some unspecified dangerous act was committed in furtherance thereof, or that in the course of committing felony Deadly Conduct (discharging), committed an antecedent misdemeanor Deadly Conduct (pointing), such that either the allegation was an attempt to bootstrap Manslaughter into Murder or was just so completely illogical as to require quashment.

**ISSUE NUMBER THREE**

The Seventh Court of Appeals erred in holding that a preparatory voluntary act suffices to impute voluntariness to the ultimate act in an allegation that does not allow strict

liability, but requires mental culpability and deprived Appellant of an instruction at trial as to voluntariness.

**ISSUE NUMBER FOUR**

On a Murder charge, the only testimony adduced at trial as to Appellant's mental culpability was that Appellant either flinched, causing the discharge of the firearm that led to death, or that his arm was either bumped or grabbed by the co-defendant, causing the discharge. As there was no other testimony as to Appellant's mental state, much less anything contradictory, the evidence should have been insufficient to support guilt beyond all reasonable doubt.

## ARGUMENT

**ISSUE NUMBER ONE:**

**The Court of Appeals for the Seventh District of Texas erred by its disregard of precedent in favor of reversion to an overruled precedent, so as to deny Appellant standing to assert his right to Due Process or his right to be free from unreasonable seizure as a result of the commission of a crime by law enforcement officers seeking to ascertain his identity.**

### ARGUMENT AND AUTHORITIES

The Seventh Court of Appeals, by and through its published Memorandum Opinion of Justices James T. Campbell, Mackey K. Hancock and Patrick Pirtle has decided that the standard elucidated in *Fuller v. State* and *Chavez v. State* control over the later ruling of this Court in *Wilson v. State*, such that Appellant had not standing to complain about the commission of crimes by law enforcement officers, who committed the crime with the specific intent to ascertain his identity, and used evidence gained as a direct result of criminal commission to secure the warrant upon which Appellant was arrested and deprived of his liberty.

### FACTS RELEVANT TO APPELLANT'S ISSUE #1

Sergeant Jason Riddlespurger, a detective with the Amarillo Police Department Special Crimes Unit testified that he was assigned as the lead investigator on this suspected homicide. R.R. 3:44-45. From information taken from the decedent's phone, Sergeant Riddlespurger identified a "Chocolate Cherry" as a person running an escort-type service that had been in contact with decedent shortly before decedent's demise. R.R. 3:46-47. In order to determine the identity of "Chocolate Cherry," an undercover operation was initiated that involved an undercover narcotics officer contacting "Chocolate Cherry" and setting up a pretend date, whereupon actually meeting, the subject was to be pulled aside and identified. The operation identified "Chocolate Cherry" as being in reality, Cree-Anna Shamell Dawn. R.R. 3:47-48. The operation, a prostitution sting, was under the planning of Lieutenant Bohannon, head of Special

13

Crimes, in coordination with Lieutenant Leidtke, commander of the Narcotics Task Force. Pursuant thereto, Officer Morgan of the Task Force set up a date and met with Ms. Dawn. R.R. 3:49-50. The "sting" occurred at a now-defunct Amarillo restaurant called TGIF (Thank God It's Friday) on June 11TH, 2012. R.R. 3:83. As part of the sting, Officer Morgan and a Sergeant Clay were to make a recording of the interaction with Ms. Dawn, with Sergeant Clay listening to determine when an offer and acceptance for sex had been made. R.R. 3:50. Sergeant Riddlespurger testified that his operational partner Clay Rolan was informed by Sergeant Clay that an offer of sex for money had been made and Ms. Dawn was then arrested without warrant. R.R. 3:50-51. The offer for sex for money was made by Cree-Anna Dawn and Officer Morgan. R.R. 3:51. Sergeant Riddlespurger testified that he had personally reviewed the audiotape of the offer and acceptance for sex and confirmed that it involved Officer Morgan making an offer to the effect of taking Ms. Dawn up to his room for three hours to fulfill the agreement. R.R. 3:51. Sergeant Riddlespurger futher confirmed that all identification of Ms. Dawn and Dustin Rhoades came from her arrest without warrant on the prostitution charge, that prior to the Dawn post-arrest interview, the Amarillo Police Department and Special Crimes did not know who Dustin Rhoades was in relation to the case (unidentified white male), and that all identification to lead to the arrest of Dustin Rhoades on a murder warrant was the product of Cree-Anna Dawn's prostitution arrest. R.R. 3:52.

Subsequent to Appellant's arrest on the murder warrant secured via the warrantless prostitution arrest of Cree-Anna Dawn, Sergeant Riddlespurger testified he was able to extract a confession, both oral and written, from Appellant, the written statement being entered at trial as State's Exhibit 133. R.R. 3:62.

Appellant lodged objections and sought suppression of the identification of and subsequent evidence against Appellant by Sergeant Riddlespurger and Nathan Shaw as the product of illegal police activity, in fact as the product of the commission of crimes by the police, and though overruled, was granted a running objection on such basis. R.R. 3:49, 54, 14-15, 57.

14

**RELEVANT STATUTES**

A person commits an offense if the person knowingly offers to engage, agrees to engage, or engages in sexual conduct for a fee. TEX. PENAL CODE ANN. §43.02(a)(1). An offense is established under Subsection (a)(1) whether the actor is to receive or pay a fee. TEX. PENAL CODE ANN. §43.02(b). "Sexual contact" means any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person. TEX. PENAL CODE ANN. §43.01(3). "Sexual conduct" includes deviate sexual intercourse, sexual contact, and sexual intercourse. TEX. PENAL CODE ANN. §43.01(4). "Sexual intercourse" means any penetration of the female sex organ by the male sex organ. TEX. PENAL CODE ANN. §43.01(5).

**STANDARD OF REVIEW**

**FOURTH AMENDMENT & ARTICLE I, § 9**

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. CONST. amend. IV. The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation. TEX. CONST. art. I, § 9. No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. TEX.CODE CRIM. PROC. ANN. art. 38.23(a).

Evidence obtained in violation of the constitutional prohibition against unreasonable searches and seizures is inadmissible and must be suppressed upon proper motion. *Mapp v. Ohio*, 367 U.S. 643, 660, 81 S.Ct. 1684, 1694, 6 L.Ed.2d 1081 (1961); *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441

(1963).  *Smith v. State*, 542 S.W.2d 420, 421 (Tex.Crim.App. 1976).  Evidence obtained in violation of the Constitution(s) must be suppressed, and a court has no discretion in the matter.  *Polk v. State,* 738 S.W.2d 274, 276 (Tex.Crim.App.1987).  The purpose of the exclusionary rule is to deter unlawful police conduct by suppressing any evidence gathered when an officer engages in willful or at the very least negligent conduct which deprives a defendant of some right. *Durio v. State*, 807 S.W.2d 876, 878 (Tex.App.-Corpus Cristi 1991).

Whether a search or seizure is reasonable under the Fourth Amendment or Article 1, Section 9 is an issue of law reviewed *de novo.*  *Higbie v. State,* 780 S.W.2d 228, 230 (Tex.Crim.App.1989).  If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.  TEX. R. APP. P. 44.2 (a).

## FIFTH AMENDMENT & ARTICLE I, § 19

No person . . . shall be deprived of life, liberty, or property without due process of law.  U.S. CONST. amend. V.  The Fifth Amendment of the United States Constitution applies to the individual states by virtue of the Fourteenth Amendment, which commands that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;  nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.  U.S. CONST. amend. XIV.  The Texas Court of Criminal Appeals has long been aware of its duty to protect rights of the accused and of binding effect of concepts of due process announced by the Supreme Court of the United States. *Charles v. State*, 424 S.W.2d 909, 913 (Tex.Crim.App.1968), certiorari denied 88 S.Ct. 2319, 392 U.S. 940, 20 L.Ed.2d 1401.

Additionally, Texas provides its own constitutional due process safeguards.  No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.  TEX. CONST. art. I, § 19.  This is further codified in the Texas Code of Criminal Procedure.  No citizen of this State shall be deprived of life, liberty, property, privileges or

16

immunities, or in any manner disfranchised, except by the due course of the law of the land.  TEX.CODE CRIM. PROC. ANN. art. 1.04.

The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.  *In re Winship* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970);  *Lowry v. State*, 692 S.W.2d 86, 87 (Tex.Crim.App. 1985).

If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.  TEX. R. APP. P. 44.2 (a).

## APPLICATION

### Code of Criminal Procedure Article 38.23.
### EVIDENCE NOT TO BE USED

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.  TEX.CODE CRIM. PROC. ANN. art. 38.23(a).

It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause. TEX.CODE CRIM. PROC. ANN. art. 38.23(b).

There are thirty exceptions under Texas law that allow law enforcement agents to engage in conduct otherwise criminalized.  Those exceptions are codified as follows:

17

**PENAL CODE**
Unlawful Interception, Use, or Disclosure of Wire, Oral or Electronic Communications, TEX. PENAL CODE ANN. §§ 16.02(c)(2) and (c)(8)(C);

Unlawful Use of Pen Register or Trap & Trace Device, TEX. PENAL CODE ANN. § 16.03(c)(3);

Unlawful Access to Stored Communications, TEX. PENAL CODE ANN. § 16.04(e)(4);

Illegal Divulgence of Public Communications, TEX. PENAL CODE ANN. § 16.05(c)(3);

Unlawful Installation of Tracking Device, TEX. PENAL CODE ANN. § 16.06(d)(2);

Criminal Trespass, TEX. PENAL CODE ANN. § 30.05(c);

Tampering With Identification Numbers, TEX. PENAL CODE ANN. § 31.11(b)(2);

Money Laundering. TEX. PENAL CODE ANN. § 34.02(c);

Witness Tampering, TEX. PENAL CODE ANN. § 36.05(c);

Prohibited Substances & Items in Correctional Facility or on TDCJ Property, TEX. PENAL CODE ANN. § 38.11(e);

Obstructing Highway or Other Passageway, TEX. PENAL CODE ANN. § 42.03(a);

Abuse of Corpse, TEX. PENAL CODE ANN. § 42.08(a) and (e);

Cruelty to Animals, TEX. PENAL CODE ANN. § 42.09(f) and (h)(B);

Chapter 46, Weapons, TEX. PENAL CODE ANN. §§ 46.15(a); 46.02 and 46.03; 46.035(h-1); 46.04(c); and 46.05(b);

Gambling, TEX. PENAL CODE ANN. § 47.09(a)(3);

**HEALTH AND SAFETY CODE**
Possession of a Controlled Substance, TEX. HEALTH & SAFETY CODE ANN. § 481.062;

Manufacture With Intent to Deliver or Delivery of Simulated Controlled Substance, TEX. HEALTH & SAFETY CODE ANN. § 482.002(b)(1);

Possession of a Dangerous Drug, TEX. HEALTH & SAFETY CODE ANN. § 483.041(c)(5);

Contributing to the Delinquency of a Narcotics Addict, TEX. HEALTH & SAFETY CODE ANN. §§ 463.011 and 463.013;

**ALCOHOLIC BEVERAGE CODE**
Purchase of Alcohol by a Minor. TEX. ALCOHOL & BEV. CODE ANN. § 106.02(a);

Possession of Alcohol by a Minor, TEX. ALCOHOL & BEV. CODE ANN. § 106.05(b)(3).

The Prostitution statute itself does set out an exception to the conduct it criminalizes, in that it is a defense to prosecution under such section that the actor engaged in the conduct that constitutes the offense because the actor was the victim of conduct that constitutes an offense under Section 20A.02 (Trafficking of Persons). TEX. PENAL CODE ANN. §43.02(d). "It is a well-known rule of statutory construction express mention or enumeration of one person, thing, consequence, or class is tantamount to an express exclusion of all others." *Ex parte McIver*, 586 S.W.2d 851, 856 (Tex.Crim.App. 1979). While it is the duty of every peace officer to preserve the peace within the officer's jurisdiction, to effect such purpose, the officer shall use all lawful means. TEX.CODE CRIM. PROC. ANN. art. 2.13(a). There is no authority for extra or unlawful means. In fact, Officer Morgan and the Amarillo Police Department were under two affirmative duties to not so act as they did. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2). A person is criminally responsible for an offense committed by the conduct of another if, having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense. TEX. PENAL CODE ANN. § 7.02(a)(3).

The Texas Legislature specifically exempted police officers who are acting in their official capacity from liability for the previously listed offenses. The Texas Legislature could, should it so decide, exempt police officers from liability for the offense of prostitution, but it has not yet done so. Thus courts are required to follow the law as it is currently written. Sometimes "it takes a thief to catch a thief," but the decision to exempt police officers from certain penal laws rests with the Legislature, not the courts. *Wilson v. State*, 311 S.W.3d 452, 463 (Tex.Crim.App.2010). Thus there is NO exception authorizing the police conduct as occurred in the instant matter. Finally, though motive

and intent to consummate the act of prostitution was not discussed at Appellant's trial, intent to consummate an offer or agreement to engage in sexual conduct is not an element of the offense of prostitution. *Mattias v. State*, 731 S.W.2d 936, 937 (Tex.Crim.App.1982).

"The Texas Legislature enacted an exclusionary rule broader than its federal counterpart." *Miles v. State,* 241 S.W.3d 28, 35 (Tex.Crim.App.2007). Article 38.23 prohibits the use of a much broader category of "illegally obtained" evidence. *Wilson v. State*, 311 S.W.3d 452, 458 (Tex.Crim.App.2010). *See generally* GEORGE E. DIX AND ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE §§ 4.11-4.35 (2d ed. 2001) (discussing the distinctions between the federal constitutional exclusionary law and the Texas statutory exclusionary rule; noting that "Article 38.23 of the Code of Criminal Procedure imposes what is probably the broadest state exclusionary requirement of any American jurisdiction.").

This Court of Criminal Appeals explained in *Wilson* that the purpose of Article 38.23 is "to protect a suspect's privacy, property, and liberty rights against overzealous law enforcement . . . [and] to deter unlawful actions which violate the rights of criminal suspects in the acquisition of evidence for prosecution." *Wilson v. State*, 311 S.W.3d 452, 458-59 (Tex. Crim. App. 2010). Public scandals involving police and "throw down" guns, pool-chalk wrapped to look like cocaine used as evidence to prosecute innocent people, false offense reports, and the like are not unheard of in this state. *Wilson*, 461. This is exactly the type of law violation that the Texas Legislature intended to prohibit when it enacted article 38.23—conduct by overzealous police officers who, despite their laudable motives, break the penal laws directly related to gathering and using evidence in their investigations. *Id.* A police officer's violation of statute to obtain a confession or other evidence is at the core of conduct proscribed by the Texas exclusionary statute. *Id.*

As admitted by Sergeant Riddlespurger at Appellant's trial, Officer Morgan made the illegal offer of money for sex. Officer Morgan had no authority at law to establish such situation whereby Appellant's co-defendant was ultimately entrapped and arrested. As further admitted by Sergeant Riddlespurger, all evidence of the identification of Cree-Anna Dawn and Appellant Dustin Rhoades came from Cree-Anna

Dawn's arrest without warrant on the prostitution charge, and that prior to the Dawn post-arrest interview, the Amarillo Police Department and Special Crimes did not know who Dustin Ryan Rhoades was in relation to the case (unidentified white male), and that all identification leading to the arrest of Appellant on a murder warrant was the product of Cree-Anna Dawn's prostitution arrest. R.R. 3:52. *See Brown v. State*, 605 S.W. 2d 572, 577 (Tex.Crim.App. 1980) ("A search warrant may not be procured lawfully by the use of illegally obtained information."); see also *State v. Aguirre*, 5 S.W.3d 911, 913-14 (Tex.App.-Houston [14th Dist.] 1999, no pet.) ("[I]f the evidence supporting the warrant was improperly obtained, the evidence obtained from executing the warrant was the fruit of an illegal search and was properly suppressed."). The poisoned tree of course produced the poisonous fruit, including Appellant's confessions, both oral and written, all of which, per *Wilson*, should have been excluded from evidence, with a resultant complete absence of evidence against Appellant.

The Seventh Court of Appeals, however, has reverted to the now inapposite earlier holdings of *Fuller*, principally, and *Chavez* to justify denial of standing to Appellant. *See Court of Appeals Opinion at 9-13*. This, in spite of the fact that *Wilson* was acknowledged by Justice Hervey's Dissenting Opinion in *Wilson* to have *sub silentio* overruled *Fuller* and *Chavez* to the extent that those Opinions denied standing to complain of a violation of a right of third parties. *Wilson*, 311 S.W.3d at 470.

### *STARE DECISIS*

*Stare decisis* dictates adherence to precedent and not disturb a settled principle of law. *McGlothlin v. State*, 896 S.W.2d 183, 188-89 (Tex.Crim.App.1995). "The doctrine of *stare decisis* requires that we demonstrate the reluctance with which one in a judicial position should approach a line of decisions of long standing with the purpose of setting aside the doctrines therein laid down, some grey with antiquity, and the doctrine of stare decisis should bear heavily on retaining the integrity of such decisions." *Wolfe v. State*, 178 S.W.2d 274, 281 (Tex.Crim.App.1944). *Stare decisis* provides certainty and structure to the criminal trial process. "When a rule has been once deliberately adopted and declared and uniformly followed, it should not be abandoned except upon the most

urgent of reasons." *Gearheart v. State*, 197 S.W. 187, 188-189 (Tex.Crim.App.1917). This Court has recognized that the doctrine of *stare decisis* should generally be followed, because it promotes judicial efficiency and consistency, it fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. *Proctor v. State*, 967 S.W.2d 840, 844-45 (Tex.Crim.App.1998).

"When the Legislature meets, after a particular statute has been judicially construed without changing the statute, we presume the Legislature intended the same construction should continue to be applied to that statute." *Marin v. State*, 891 S.W.2d 267, 271-272 (Tex. Crim. App. 1994); *Hardy v. State*, 963 S.W.2d 516, 523 (Tex.Crim.App. 1997). Article 38.23 has remained unchanged since *Wilson* was decided in 2010, in fact since the 70TH Legislature last amended in 1987, and was reaffirmed by the 83RD, 84TH, and 85TH Legislatures, in 2011, 2013, and 2105, respectively.

Subsequent to *Wilson*, this Court has further held that, when a defendant challenges the admissibility of evidence on the ground it was wrongfully obtained by a private person, the defendant must show that the person obtained the evidence in violation of law, such as criminal trespass or breach of computer security, reinforcing *Wilson*'s proposition that a violation of law is itself sufficient to invoke 38.23's protection. *See Baird v. State*, 379 S.W.3d 353, 357 (Tex.App.-Waco 2012) (), *aff'd*, 398 S.W. 3d 220 (Tex.Crim.App. 2013).

In *Wilson*, the issue was an officer's fabrication of a document, purported to be an official government document, to convince a suspect to confess. Here, the officers' conspired to commit prostitution, and in fact committed prostitution. In both cases there were no victims whose rights had been violated, and thus, per the Seventh Court's opinion, there could never be anyone with standing to complain about crimes committed by law enforcement. Worse, were we to follow the Seventh Court's adoption and attempted perpetuation of the abandoned *Fuller/Chavez* line, it would be perfectly legal for the police to commit theft of information or property in someone else's possession, or even commit Aggravated Kidnapping and Aggravated Assault By A Public Servant (as in torturing information out of people) and use the fruits thereof with complete impunity. That the issue here was a lesser degree of severity of the crime

changes nothing, as the difference is only one of degree, not type. Such absurdities , per *Wilson*, obviously cannot exist in any rational and fair system of law

The Seventh Court of Appeals was bound to follow the precedent of this Court, and erred in reversion to the law of its choice, as opposed to the established law.

For the aforementioned reasons, Appellant complains that the Seventh Court of Appeals has so far deviated from previous interpretation by this Honorable Court of Criminal Appeals, of Code of Criminal Procedure Article 38.23, so as to annihilate the intention of Article 38.23 and render said Article defunct, such that Appellant has been denied the protection due him under and through the codified law of the land upon which Appellant relied, and petitions for a review by this Court.

**ISSUE NUMBER TWO:**

**The Court of Appeals for the Seventh District of Texas erred by its holding that an allegation of Murder based on Deadly Conduct committed while committing Deadly Conduct, or alternatively that Deadly Conduct standing alone, or alternatively that Deadly Conduct without a specified further dangerous act, is sufficient to deny quashment of an indictment paragraph so alleging.**

ARGUMENT AND AUTHORITIES

THE OFFENDING PARAGRAPH

PARAGRAPH II

**AND THE GRAND JURORS do further present in and to the Court that in Potter, County, Texas, and before the presentment of this Indictment, DUSTIN RYAN RHOADES, the defendant, on or about the 7th day of June, 2012 did then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to-wit:  pointing a firearm at or in the direction of Deans Anderson, that caused the death of Deans Anderson, and the Defendant was then and there in the course of intentionally or knowingly committing a felony, to-wit:  Deadly Conduct, and said death of Deans Anderson was caused while the Defendant was in the course of and in furtherance of the commission or attempt of said felony.**

Appellant timely lodged objection to the offending paragraph by virtue of his Motion To Quash And Exception To The Substance Of The Indictment on the 30TH of August, 2013, prior to the commencement of trial on the 3RD of September, 2013.  The Motion was heard at pre-trials on the 3RD of September, 2013, immediately before the commencement of trial, and was of course denied.  R.R. 2:4-7.

**ELEMENTS OF THE OFFENSE CHARGED**

A person commits an offense if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or

24

attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(3). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. TEX. PENAL CODE ANN. § 6.03(b). A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. TEX. PENAL CODE ANN. § 6.03(c).

## STANDARD OF REVIEW

No person . . . shall be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V. The Fifth Amendment of the United States Constitution applies to the individual states by virtue of the Fourteenth Amendment, which commands that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV. The Texas Court of Criminal Appeals has long been aware of its duty to protect rights of the accused and of binding effect of concepts of due process announced by the Supreme Court of the United States. *Charles v. State*, 424 S.W.2d 909, 913 (Tex.Crim.App.1968), certiorari denied 88 S.Ct. 2319, 392 U.S. 940, 20 L.Ed.2d 1401.

Additionally, Texas provides its own constitutional due process safeguards. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CONST. art. I, § 19. This is further codified in the Texas Code of Criminal Procedure.

25

No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.  TEX.CODE CRIM. PROC. ANN. art. 1.04.

The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.  *In re Winship* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970);  *Lowry v. State*, 692 S.W.2d 86, 87 (Tex.Crim.App. 1985).

If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.  TEX. R. APP. P. 44.2 (a).

## APPLICATION

A conviction for felony murder under Section 19.02(b)(3), will not lie when the underlying felony is manslaughter or a lesser included offense of manslaughter. *Lawson v. State*, 64 S.W.3d 396, 397 (Tex.Crim.App.2001).   This holding is consistent with the plain meaning of the felony murder provision. As explained in *Garrett:*

> If a felony murder may be predicated on the underlying aggravated assault, the statutory restriction on the scope of the doctrine that prohibits basing a felony murder prosecution on voluntary manslaughter could be regularly circumvented. The legislative prohibition against resting a Sec. 19.02(a)(3) [now, 19.02(b)(3)] prosecution on voluntary manslaughter necessarily includes a prohibition against resting such a prosecution on offenses statutorily includable in voluntary manslaughter.

Id., (citing *Garrett v. State,* 573 S.W.2d 543, 546 (Tex.Crim.App.1978)).

Manslaughter lies in that a person commits an offense if he recklessly causes the death of an individual.   TEX. PENAL CODE ANN. § 19.04(a).   An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

26

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission;  or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.  TEX.CODE CRIM. PROC. ANN. art. 37.09.

Deadly Conduct, as entertained in the present case and offending paragraph of the indictment, lies in that a person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.  TEX. PENAL CODE ANN. § 22.05(a).  Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.  TEX. PENAL CODE ANN. § 22.05(c).

Of first note is that the charge alleges pointing a firearm at an individual as an instance of Deadly Conduct, and then seems to say that another unspecified act of Deadly Conduct was committed.  Inasmuch as the offending paragraph alleges an act of Deadly Conduct that by statutory definition is presumed to be reckless, it differs from the offense of Manslaughter only in that 1), it is established by proof of the same or less than all the facts required to establish the commission of the offense charged, and 2), it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission - meaning that it is a lesser included of Manslaughter and cannot be charged as Murder.  As the State did nothing to defeat the presumption of recklessness, the prosecution of Appellant on this allegation is a flagrant violation of Penal Code Section 19.02(b)(3) and *Lawson*.

Alternatively, if the allegation is that while committing the misdemeanor Deadly Conduct, Appellant further committed felony Deadly Conduct, the allegation still fails statutorily.  As the dangerous act must have been committed in the course of a felony, which would be discharging in the direction of a person, that act was never specified.  And if the misdemeanor Deadly Conduct (pointing) is supposed to be the basis for the act committed in the course of felony Deadly Conduct (discharging) then

27

the allegation not only fails statutorily but abjectly fails as a proposition of reason. "Discharging in the direction of," necessarily causally follows "pointing in the direction of."

Finally, the Seventh Court of Appeals reliance on *Washington* (incorrectly cited by Justice Campbell as 417 S.W.3d at 721; correctly cited as 417 S.W.3d 713, 721) *Yandell*, etc. is misplaced, as those case do not involve firearm discharge at persons, or otherwise commit the same logical fallacy. The Murder statute requires that, while in the course of committing a felony, yet another act must be committed in furtherance of the underlying felony. If the allegation is that the unspecified "dangerous act" in furtherance of the commission of the underlying felony is the discharge of the firearm, then the allegation must fail even more spectacularly. Consider, in the course of discharging a firearm at a person, Appellant discharged a firearm at a person. This is just the primal logical fallacy of Circularity. Though the Seventh Court of Appeals asserts Appellant is confused, the dictates of reason demonstrate that it is the Seventh Court of Appeals and the State that are confused concerning basic rules of logic and reasoning.

Further, as the State was clear in informing Appellant's jury that it could convict on either paragraph of the indictment, there can be no assurance that Appellant was not convicted on a Manslaughter/lesser-included-charge disguised as a Murder charge, to his detriment and harm, and thus there can be no determination beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

For the aforementioned reasons, Appellant complains that the Seventh Court of Appeals erred in affirming the trial court's failure to quash the offending paragraph as requested by Appellant, such that Appellant has been denied the protection due him under and through the codified law of the land upon which Appellant relied, and petitions for a review by this Court.

**ISSUE NUMBER THREE:**

**The Court of Appeals for the Seventh District of Texas erred by its holding that any voluntary act shall suffice to imply voluntariness to the ultimate act alleged, such that an instruction on voluntariness shall not lie, no matter that evidence was adduced as to the involuntariness of shooting an individual from multiple sources of testimony.**

## ARGUMENT AND AUTHORITIES

### STANDARD OF REVIEW

No person . . . shall be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V. The Fifth Amendment of the United States Constitution applies to the individual states by virtue of the Fourteenth Amendment, which commands that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV. The Texas Court of Criminal Appeals has long been aware of its duty to protect rights of the accused and of binding effect of concepts of due process announced by the Supreme Court of the United States. *Charles v. State*, 424 S.W.2d 909, 913 (Tex.Crim.App.1968), certiorari denied 88 S.Ct. 2319, 392 U.S. 940, 20 L.Ed.2d 1401.

Additionally, Texas provides its own constitutional due process safeguards. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CONST. art. I, § 19. This is further codified in the Texas Code of Criminal Procedure. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX.CODE CRIM. PROC. ANN. art. 1.04.

The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged. *In re Winship* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *Lowry v. State*, 692 S.W.2d 86, 87 (Tex.Crim.App. 1985).

If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2 (a).

**APPLICATION**

Section 6.01(a) of the Texas Penal Code states that a person commits an offense only if he engages in voluntary conduct, including an act, an omission, or possession. *Alford v. State*, 866 S.W.2d 619, 621 (Tex.Crim.App.1993). "Voluntariness," within the meaning of §6.01(a), refers only to one's own physical body movements. *Id; Trujillo v. State*, 227 S.W.3d 164, 169 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). The issue of the voluntariness of one's conduct, or bodily movements, is separate from the issue of one's mental state. *Adanandus v. State*, 866 S.W.2d 210, 230 (Tex.Crim.App.1993). When a person claims the involuntary-act defense he is conceding that his own body made the motion but denies responsibility for it. *Rogers v. State*, 105 S.W.3d 630, 639 n. 30 (Tex.Crim.App.2003). If those physical movements are the non-volitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other non-volitional impetus, that movement is not voluntary. *Id.* Conduct is not rendered involuntary merely because an accused does not intend the result of his conduct. *George v. State*, 681 S.W.2d 43, 45 (Tex.Crim.App.1984). As a matter of law, the fact that the defendant's conduct also includes a bodily movement of the defendant sufficient for a gun to discharge a bullet, without more—such as precipitation by another individual—a jury need not be charged on the matter of whether the defendant voluntarily engaged in the conduct with which he is charged. *Id.*

Accident is not a defense under the Texas Penal Code. Although previously a defense, it is now encompassed by Penal Code §6.01(a). *Adanandus*, at 229. While the defense of an accident is no longer present in the Penal Code, the courts have long held

that homicide that is not the result of voluntary conduct is not to be criminally punished. *Brown v. State*, 955 S.W.2d 276, 280 (Tex.Crim.App. 1997).

The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense. TEX. PENAL CODE ANN. § 2.03(c). If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted. TEX. PENAL CODE ANN. § 2.03(d). A ground of defense in a penal law that is not plainly labeled in accordance with this chapter has the procedural and evidentiary consequences of a defense. TEX. PENAL CODE ANN. § 2.03(e).

Because 'voluntarily' means the absence of accidental act, omission or possession, it is not a fact that the State must prove in every case. [T]he State need not prove voluntariness unless the evidence raised the issue of accident, in which case the State must disprove the theory of accident beyond a reasonable doubt. *Alford v. State*, 866 S.W.2d at 624 n. 8. If the issue is raised by the evidence, a jury may be charged that a defendant should be acquitted if there is a reasonable doubt as to whether he voluntarily engaged in the *conduct* of which he is accused. *Adanandus*, 866 S.W.2d at 230.

Under § 2.03(c), a defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true. If a defense is supported by the evidence, then the defendant is entitled to an instruction on that defense, even if the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible. *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex.Crim.App.2007). This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence. *Woodfox v. State*, 742 S.W.2d 408, 409-10 (Tex.Crim.App.1987). When a judge refuses to give an instruction on a defensive issue because the evidence supporting it is weak or unbelievable, he effectively substitutes his judgment on the weight of the evidence for that of the jury. *Id*. The weight of the evidence in support of an instruction is immaterial. *Id*. When the voluntariness of a defendant's actions in firing a gun is the defendant's primary defense, he is entitled to have the jury rule upon that defense and is harmed in not

having the requested instruction submitted to the jury." *Payne v. State*, 33 S.W.3d 374, 376 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd).

As the issue of whether the discharge of the firearm resulting in the decedent's death was clearly raised by Appellant's oral and written statements, as relayed by Sergeant Riddlespurger's testimony, and by the testimony of Kristie Ortiz, Appellant was entitled to have his requested charge submitted to his jury. The failure of the trial court to so allow, prevented Appellant's jury from considering such evidence and as a consequence, per *Payne*, was harmed.

The Seventh Court of Appeals relies primarily upon *Farmer v. State* for the proposition that any voluntary preparatory act renders the ultimate act voluntary, such that an instruction per Article is precluded. Court of Appeals Opinion at 13-16. Yet the reliance is misplaced, at best. Farmer involved a Driving While Intoxicated charge predicated upon Farmer's voluntary ingestion of medication, though Farmer alleged involuntariness on the basis of his lack of knowledge that one of the particular medications laid out for him by his wife was Ambien, or that he was involuntarily intoxicated even though the voluntarily took the medication. See *Farmer v. State*, 411 S.W.3d 901 (Tex.Crim.App 2013). Yet such is distinguishable from the present set of facts. *Farmer* involved a single act, ingestion, as it relates to an issue in strict liability, for which there is no culpable mental state. The act in question here requires a culpable mental state, intention or knowledge, in causing the death of an individual through the discharge of a firearm. Thus, preparatory acts are irrelevant to the ultimate issue of the mental culpability in the discharge of the firearm. Per the Seventh Court of Appeals reasoning there could virtually never be an accidental discharge of a firearm lest it just go off by itself without any human voluntarily touching it, which both eviscerates and renders moot Chapter Two of Penal Code.

However, the most condemnable aspect of the Seventh Court of Appeals reliance on Farmer lies in the Seventh Court of Appeals disregard of the implication expressly contained in Farmer's conclusion. "Moreover, because no other evidence at trial raised an issue of Appellant's voluntariness in taking that medication, the trial court properly denied Appellant's request." *Farmer v. State*, 411 SW 3d 901, 908 (Tex.Crim.App. 2013). In Appellant's case at bar, there was ample evidence from Appellant that he suffered an

involuntary reflex as the decedent stepped toward him and he flinched as he turned away, and from Appellant's girlfriend, Kristie Ortiz, who testified he had told her that the gun had gone off when the co-defendant had either bumped or grabbed his arm. Appellant was entitled to have his requested charge submitted to his jury, and the Seventh Court of Appeals erred in failing to so acknowledge.

For the aforementioned reasons, Appellant complains that the Seventh Court of Appeals has so far deviated from all previous interpretations, by all courts, of Chapters Two and Six of the Texas Penal Code, so as to annihilate the intention of Sections 6.01 and 2.03 thereof, and render said Sections defunct,such that Appellant has been denied the protection due him under and through the codified law of the land upon which Appellant relied, and petitions for a review by this Court.

**ISSUE NUMBER FOUR:**

**The Court of Appeals for the Seventh District of Texas erred by its holding that the evidence in this matter was sufficient to sustain a conviction for Murder.**

## ARGUMENT AND AUTHORITIES

### ELEMENTS OF THE OFFENSE CHARGED

A person commits an offense if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1). A person commits an offense if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(3). A person commits an offense if he recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04(a). A person commits an offense if he causes the death of an individual by criminal negligence. TEX. PENAL CODE ANN. § 19.05(a). A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. TEX. PENAL CODE ANN. § 6.01(a). Except as provided in Subsection (b), a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires. TEX. PENAL CODE ANN. § 6.02(a). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. TEX. PENAL CODE ANN. § 6.03(b). A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist

34

or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. TEX. PENAL CODE ANN. § 6.03(c). A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. TEX. PENAL CODE ANN. § 6.03(d).

**STANDARD OF REVIEW**

No person . . . shall be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V. The Fifth Amendment of the United States Constitution applies to the individual states by virtue of the Fourteenth Amendment, which commands that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV. The Texas Court of Criminal Appeals has long been aware of its duty to protect rights of the accused and of binding effect of concepts of due process announced by the Supreme Court of the United States. *Charles v. State*, 424 S.W.2d 909, 913 (Tex.Crim.App.1968), certiorari denied 88 S.Ct. 2319, 392 U.S. 940, 20 L.Ed.2d 1401.

Additionally, Texas provides its own constitutional due process safeguards. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CONST. art. I, § 19. This is further codified in the Texas Code of Criminal Procedure. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CODE CRIM. PROC. ANN. art. 1.04.

If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2 (a). All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. TEX. PENAL CODE ANN. § 2.01.

A review of the legal sufficiency of evidence entails a review of all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v.* State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)); *Hartsfield v. State,* 305 S.W.3d 859, 863 (Tex.App.-Texarkana 2010, pet. ref'd). Legal sufficiency is examined under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson,* 443 U.S. at 318-19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Because the jury is the sole judge of the weight and credibility of the witnesses' testimony, it may accept or reject any or all testimony of any witness. *See Heiselbetz v. State,* 906 S.W.2d 500, 504 (Tex. Crim. App. 1995). The jury may also consider the evidence presented and make reasonable inferences based on that evidence. As the Court of Criminal Appeals has observed,

> The jury can draw multiple reasonable inferences as long as each inference is supported by evidence presented at trial. . . . [A]n inference is a

> conclusion reached by considering other facts and deducing a logical consequence from them. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt.

*Hooper,* 214 S.W.3d at 16.

Intent may be inferred from circumstantial evidence and from the defendant's words, acts, and conduct. *Lay v. State,* 359 S.W.3d 291, 295 (Tex.App.-Texarkana 2012, no pet.) (citing *Laster v. State,* 275 S.W.3d 512, 524 (Tex.Crim.App. 2009); *Brown v. State,* 122 S.W. 3d 794, 800 (Tex.Crim.App.2003)).

A jury can disregard testimony if it chooses to; it cannot, however, use that testimony to reach the opposite conclusion. *Johnson v. State,* 673 S.W.2d 190, 196 (Tex.Crim.App.1984). The jury's right to disbelieve a witness does not constitute evidence to the contrary. *Id.* ("The fact the jury in the instant case was entitled to disregard the accident story to deputy Drewell (and offered by the State) does not mean that the missing elements of the charged offense are supplied by the rejection."); *In re S.B.,* 117 S.W.3d 443, 451 (Tex.App.-Fort Worth 2003, no pet.); *Tippitt v. State,* 41 S.W.3d 316, 326 (Tex.App.-Fort Worth 2001, no pet.).

## APPLICATION

Section 6.01(a) of the Texas Penal Code states that a person commits an offense only if he engages in voluntary conduct, including an act, an omission, or possession. *Alford v. State,* 866 S.W.2d 619 (Tex.Crim.App.1993). "Voluntariness," within the meaning of §6.01(a), refers only to one's own physical body movements. *Id; Trujillo v. State,* 227 S.W.3d 164, 169 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). The issue of the voluntariness of one's conduct, or bodily movements, is separate from the issue of one's mental state. *Adanandus v. State,* 866 S.W.2d 210, 230 (Tex.Crim.App.1993). When a person claims the involuntary-act defense he is conceding that his own body made the motion but denies responsibility for it. *Rogers v. State,* 105 S.W.3d 630, 639 n. 30 (Tex.Crim.App.2003). If those physical movements are the non-volitional result of someone else's act, are set in motion by some independent non-human force, are caused

by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other non-volitional impetus, that movement is not voluntary. *Id.*

Accident is not a defense under the Texas Penal Code. Although previously a defense, it is now encompassed by Penal Code §6.01(a). *Adanandus*, at 229. While the defense of an accident is no longer present in the penal code, the courts have long held that homicide that is not the result of voluntary conduct is not to be criminally punished. *Brown v. State*, 955 S.W.2d 276, 280 (Tex.Crim.App.1997). Because 'voluntarily' means the absence of accidental act, omission or possession, it is not a fact that the State must prove in every case. [T]he State need not prove voluntariness unless the evidence raised the issue of accident, in which case the State must disprove the theory of accident beyond a reasonable doubt. *Alford*, 866 S.W.2d at 624 n. 8.

Per the testimony adduced at trial and Sergeant Riddlespurger's summation, there was no evidence of what ultimately transpired leading to Deans Anderson's death beyond Appellant's recitation. Nathan Shaw did not see what happened, only the aftermath. LaVigne did not testify and no statement from such person was ever produced. Co-defendant Cree-Anna Dawn, by all of her accounts, did not witness the shooting or the final interaction that led to it. There were no witnesses that provided testimony that Appellant intentionally and knowingly caused the death of Deans Anderson.

Appellant's statement was that when Deans Anderson confrontationally stepped toward him and reached toward him, as he was holding the gun, he twisted away and the gun discharged, and that he did not mean for it do so. That is not an admission of Appellant of intent or knowledge of anything other than an involuntary defensive reflex to avoid harm to himself in the event his weapon was taken away and used on him, and an inability to make the weapon do as he intended, or to keep it from doing as he intended it not do. There was no evidence that Appellant was familiar with firearms and knew how to handle one without creating a risk of accidental discharges. Alternatively, Kristie Ortiz' hearsay statement that the weapon discharged when Cree-Anna Dawn grabbed Appellant's arm cannot and does not establish an intentional or knowing murder, but instead just an accident. And by all accounts, Appellant did not confront Deans Anderson to murder, assault, or do anything else than to retrieve money

38

rightfully belonging to Cree-Anna Dawn and in the possession of Deans Anderson by virtue of his act of robbery.

While the versions may be inconsistent, there yet remains no version entered in testimony wherein Appellant committed the act as charged, and thus this is a "no evidence" matter. Even if Appellant were completely disbelieved by his jury, there is no evidence to the contrary by which a jury may have found beyond all reasonable doubt Appellant guilty as charged.

The Seventh Court of Appeals asserts, to the contrary, and specifically contrary to *Johnson*, that a fact-finder may infer evidence contrary to that adduced at trial. While correct that a jury was entitled to take at face value Appellant's statement that, as decedent stepped towards him, he "twisted and pulled the trigger," what the Seventh Court of Appeals misses is that the face value of such a statement is inherently limited. "I twisted and pulled the trigger" only answers the question of how the deed was done, but not why. As the crux of the offense is why the deed was done, there necessarily must be more. In this case the more was answered by Appellant as an involuntary flinching, or answered by his girlfriend as an involuntary discharge when his arm was either bumped or grabbed by the co-defendant. Yet there was no testimony to the contrary. Thus, in upholding the sufficiency of the evidence in this matter, the Seventh Court of Appeals has held that a jury may indeed infer non-existent evidence, and evidence to the contrary of that adduced at trial. And while correct that Appellant's jury may have been within its prerogative to disregard the testimony of both Appellant and the only other witness to testify as to motive, or even the co-defendant's statement that Appellant had agreed to "not do anything stupid" as they were approaching the decedent's apartment, they were yet not within their prerogative to believe the opposite and self-supply the missing element of intention or knowledge, as the standard under which any and every criminal jury must labor is the standard of beyond all reasonable doubt.

For the aforementioned reasons, Appellant complains that the Seventh Court of Appeals has so far deviated from all previous interpretations, by all courts, of the

standards governing evidentiary sufficiency as to annihilate the sufficiency of the evidence as a viable concept of law and render said concept defunct, such that Appellant has been denied the protection due him under and through the codified law of the land upon which Appellant relied, and petitions for a review by this Court.

**PRAYER**

WHEREFORE, Appellant respectfully prays this honorable Court of Criminal Appeals take this case under review for the reasons stated above, and that after findings by this Court, that the judgment of the Court of Appeals for the Seventh District of Texas at Amarillo be reversed, the Judgment and conviction vacated, and Appellant Dustin Ryan Rhoades be ordered acquitted of the charges against him, or otherwise be remanded to the trial court for a new trial.

Respectfully submitted,

_____
JAMES E. WOOLDRIDGE
S.B.T. No. 24010492
600 S. Tyler Street
Suite 1704
LB 12051
Amarillo, Texas 79101
TEL: (806) 418 8575
FAX: (806) 418 8576
j.e.wooldridge@att.net
Attorney for Appellant
DUSTIN RYAN RHOADES

41

## CERTIFICATE OF SERVICE

I, JAMES E. WOOLDRIDGE, certify that a true and correct copy of the foregoing Brief For Appellant was delivered by electronic service, via ProDoc efiling 2 to the 47TH Judicial District Attorney's Office for Appellee the State of Texas, 501 S. Fillmore Street, Suite 5A, Amarillo, Texas 79101, on the 16TH day of November, 2015, in accordance with TRAP 9.5.

/s/  JAMES E. WOOLDRIDGE
JAMES E. WOOLDRIDGE

## CERTIFICATE OF COMPLIANCE

I, JAMES E. WOOLDRIDGE, certify that the foregoing Brief For Appellant, including headings, footnotes, and quotations, but excepting caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, contains 11,549 words.

/s/  JAMES E. WOOLDRIDGE
JAMES E. WOOLDRIDGE

# APPENDIX A



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00319-CR
_____

DUSTIN RYAN RHOADES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 65,540-D, Honorable Don R. Emerson, Presiding

September 15, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

A jury convicted appellant Dustin Ryan Rhodes of murder and assessed punishment, enhanced, at forty years' confinement in prison.[1] The trial court imposed sentence accordingly. Appellant challenges his conviction through four issues. Three seek rendition of a judgment of acquittal and the fourth, a new trial. We will affirm the judgment of the trial court.

_____

[1] *See* TEX. PENAL CODE ANN. § 19.02(b) (West 2011) (murder); § 12.42(c)(1) (West Supp. 2014) (enhancing minimum term of confinement for first degree felony to fifteen years).

## Background

Around midnight on June 7, 2012, Deans Anderson was found shot to death just inside his Amarillo apartment. Another resident of the complex had called 911 after he heard a gunshot and watched a man and woman run to a red minivan. The man carried a "small black pistol." From Anderson's cellphone a police detective obtained information that led officers, through an undercover investigation, to Cree-Anna Shamell Dawn, a participant in an escort service. Dawn had accompanied appellant to the door of Anderson's apartment on the night of his death. She identified appellant as Anderson's shooter.

Questioned by police, appellant gave a voluntary written statement. According to his statement, appellant had been acquainted with Dawn for a short time. On June 7, she called appellant to tell him a man attempted to rape her and took her money. She enlisted appellant's help to recover the money. Using a minivan belonging to his girlfriend Kristie Ortiz, appellant drove Dawn to the apartment complex and followed her to Anderson's apartment. Appellant held his .357 revolver in his hand. Anderson opened the apartment door after Dawn knocked. Anderson spoke to Dawn. Appellant then stepped up to the door, pointed the gun at Anderson and demanded he give Dawn the money and empty his pockets. The men exchanged words and Anderson stepped toward appellant. The statement continued, "I twisted and pulled the trigger. I didn't mean to. The shot hit the man in the face. I was sorry and wanted so bad to help him." Appellant and Dawn ran to the minivan and left the complex. A few days later, his statement said, appellant sold the gun to an unidentified man along a north Amarillo street.

Appellant was charged by indictment with Anderson's murder. Appellant's written statement was admitted into evidence at trial. Ortiz testified, telling the jury that a few days after the occurrence appellant told her he pulled the gun on Anderson to scare him and Dawn "pulled his arm away to quit, and then the gun went off." Ortiz acknowledged she did not recount this version of the occurrence in a June 12 written statement to police.

A pathologist testified to his autopsy of Anderson's body, and expressed the opinion the cause of death was a gunshot wound to the head.

Appellant did not testify. He was convicted and sentenced as noted.

Analysis

By his first, third, and fourth issues appellant seeks rendition of a judgment of acquittal. He requests reversal and remand in his second issue. We will first consider appellant's three rendition issues.

Sufficiency of the Evidence

In his first issue, appellant asserts the evidence was insufficient to prove he intentionally or knowingly murdered Anderson because the firearm discharged as a result of an "involuntary reflex."

We evaluate the sufficiency of evidence supporting criminal convictions under the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). That standard requires that we view all evidence in the light most favorable to the verdict and

determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Salinas v. State,* 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). As fact finder, the jury is the sole judge of the credibility of the witnesses and may choose to believe all, some, or none of the testimony the parties presented. *Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Williams v. State,* 290 S.W.3d 407, 412 (Tex. App.—Amarillo 2009, no pet.).

The State's indictment charged appellant with murder under two theories, that he intentionally and knowingly caused Anderson's death by shooting him with a firearm; and that he committed or attempted to commit a felony, deadly conduct, and in the course of it committed or attempted to commit an act clearly dangerous to human life, pointing a firearm at or in Anderson's direction, that caused Anderson's death. *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (b)(3) (West 2011).

Under Penal Code section 19.02(b)(1), a person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1). Section 19.02(b)(3) is the "felony murder" provision. TEX. PENAL CODE ANN. § 19.02(b)(3). Essentially, felony murder is, "an unintentional murder committed in the course of committing a felony." *Rodriguez v. State,* 454 S.W.3d 503, 508 (Tex. Crim. App. 2014) (citing *Fuentes v. State,* 991 S.W.2d 267, 272 (Tex. Crim. App. 1999)). Specifically, felony murder is committed where a person "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt . . . he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." *Id.* (quoting Penal

4

Code section 19.02(b)(3)). A person commits the offense of deadly conduct if he "knowingly discharges a firearm at or in the direction of . . . one or more individuals." TEX. PENAL CODE ANN. § 22.05(b) (West 2011). Deadly conduct may serve as the underlying felony for proof of felony murder. *Washington v. State,* 417 S.W.3d 713, 721 (Tex. App.—Houston [14th Dist.] 2013, pet. refused); *Miles v. State,* 259 S.W.3d 240, 247 (Tex. App.—Texarkana 2008, pet. refused).

A person acts intentionally with respect to a result of his conduct when "it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011). A person acts knowingly with respect to a result of his conduct when "he is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE ANN. § 6.03(b).

The court's charge authorized conviction under either of the State's theories of guilt, and from our review of the record we find the evidence sufficient to permit conviction under either theory. By appellant's statement, he pointed the .357 revolver at Anderson and told him to give Dawn the money and empty his pockets. When Anderson stepped toward him, appellant "twisted and pulled the trigger." In its role as trier of fact, the jury was entitled to accept appellant's statement at face value. From his conduct of pointing the revolver at Anderson at close range and pulling the trigger, and despite appellant's assertion he did not "mean to," the jury was further entitled to infer appellant intended the natural and usual consequence of such an action, the death of Anderson. *Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct" of the accused). The jury also could have concluded appellant's actions were

5

accompanied by the knowledge that they were reasonably certain to cause Anderson's death, even if appellant did not intend it. Either mental state authorizes conviction for murder.

The jury was equally entitled to disbelieve Ortiz's version which included appellant's statement the gun discharged when Dawn pulled his arm away. Ortiz made no mention of Dawn pulling appellant's arm in her written statement given some eight days after the shooting. Rather, she first mentioned this version in January 2013 during a conversation with the prosecutor and an investigator.

Appellant's written statement also provided evidence permitting a rational jury to conclude beyond reasonable doubt that appellant knowingly discharged a firearm at or in Anderson's direction, that doing so was clearly dangerous to human life and that it caused Anderson's death. *See* TEX. PENAL CODE ANN. § 22.05(b).

Because, viewed in the light most favorable to the verdict, the record contains evidence from which jurors rationally could have found all elements of the offense of murder, the evidence is sufficient. Appellant's first issue is overruled.

Motion to Quash Paragraph Two of the Indictment

By his third issue, appellant argues the trial court erred in refusing to quash paragraph two of the indictment. As we understand appellant's argument here, he contends paragraph two of the indictment did not properly allege felony murder because as worded it alleged only the misdemeanor level of deadly conduct.

The second paragraph of the indictment read:

6

AND THE GRAND JURORS do further present in and to the Court that . . . DUSTIN RYAN RHOADES, the defendant, on or about the 7th day of June, 2012 did then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to-wit: pointing a firearm at or in the direction of Deans Anderson, that caused the death of Deans Anderson, and the Defendant was then and there in the course of intentionally or knowingly committing a felony, to-wit: Deadly Conduct, and said death of Deans Anderson was caused while the Defendant was in the course of and in furtherance of the commission or attempt of said felony.

In his pretrial motion to quash appellant asserted, "As alleged, Deadly Conduct is an act Reckless in its level of culpability, and is therefore a lesser included offense of Manslaughter, and cannot therefore be charged as Murder against Defendant Dustin Ryan Rhoades." After a brief hearing on the morning of trial, the motion was denied.

The sufficiency of a charging instrument presents a question of law. *Smith v. State,* 309 S.W.3d 10, 13 (Tex. Crim. App. 2010). An appellate court reviews a trial judge's ruling on a motion to quash a charging instrument *de novo. Id.* at 14.

As applicable here, a person commits the offense of murder if he commits a felony, other than manslaughter, and in the course of and in furtherance of the commission he commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b).

Penal Code section 22.05 contains misdemeanor and felony categories of the offense of deadly conduct. *See* TEX. PENAL CODE ANN. § 22.05. First, the offense is committed if a person "recklessly engages in conduct that places another in imminent danger of serious bodily injury." TEX. PENAL CODE ANN. § 22.05(a). This is a Class A misdemeanor. TEX. PENAL CODE ANN. § 22.05(e). Second, a person commits the offense of deadly conduct if he "knowingly discharges a firearm at or in the direction

7

of . . . one or more individuals."  TEX. PENAL CODE ANN. § 22.05(b).  This is a third-degree felony.  TEX. PENAL CODE ANN. § 22.05(e).  Thus the felony category of deadly conduct is committed only by knowingly discharging a firearm.

Section 22.05(c) states that "recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another . . . ."  TEX. PENAL CODE ANN. § 22.05(c).  Those concepts, recklessness and danger, have application only to the misdemeanor category of deadly conduct.  *See* TEX. PENAL CODE ANN. § 22.05(a).  But paragraph two of the indictment alleged that appellant pointed a firearm at or in the direction of Anderson.

Perhaps because, and as the State concedes, paragraph two of the indictment "could have been more artfully drawn," appellant confuses the elements of the required underlying felony with the "act clearly dangerous to human life" requirement contained in the felony murder provision of section 19.02(b)(3).  It was to satisfy that requirement that paragraph two contains the allegation appellant pointed a firearm.

It now appears "well established under Texas law that deadly conduct can be the underlying felony for felony murder."  *Washington,* 417 S.W.3d at 721 (citing *Miles,* 259 S.W.3d at 247; *Yandell v. State,* 46 S.W.3d 357, 361 (Tex. App.—Austin 2001, pet. refused); *Rodriguez v. State,* 953 S.W.2d 342, 354 (Tex. App.—Austin 1997, pet. refused*), cited with approval in Lawson v. State,* 64 S.W.3d 396, 401 (Tex. Crim. App. 2001) (Cochran, J., concurring)).  The culpable mental state for felony deadly conduct is knowingly, which precludes the offense from being a lesser-included offense of manslaughter which requires only the less culpable mental state of recklessness.  *See*

8

*Washington,* 417 S.W.3d at 721-22 (citing *Yandell,* 46 S.W.3d at 361). Finally, the underlying felony necessary for proving the offense of felony murder, so long as it is not manslaughter, may also serve as the act clearly dangerous to human life that causes the death of an individual. *See Johnson v. State,* 4 S.W.3d 254, 258 (Tex. Crim. App. 1999) (disavowing the "overly broad statement in *Garrett v. State,* 573 S.W.2d 543, 546 (Tex. Crim. App. [Panel Op.] 1978), that in order to support a conviction under the felony murder provision, '[t]here must be a showing of felonious criminal conduct other than the assault causing the homicide'" and holding the only limitation by merger on the offense of felony murder is a conviction "will not lie when the underlying felony is manslaughter or a lesser included offense of manslaughter"). We find no error by the trial court in denying appellant's motion to quash. Appellant's third issue is overruled.

Standing

Appellant argues in his fourth issue that police learned his identity, and as a result later obtained his written statement, through the means of unlawful activity, a violation of the prostitution statute.[2] Therefore, he urges, the trial court erred by failing to suppress identification evidence and his written statement.

As noted, police discovered a recent contact on Anderson's cellphone. Following up, they linked the call to a person working in an "escort service" under the alias "Chocolate Cherry." Officers set up an undercover prostitution investigation of this person and arranged a meeting with her. During a hearing outside the presence of the jury, a detective testified at the meeting an offer of sex for money was made and

---

[2] *See* TEX. PENAL CODE ANN. § 43.02 (West Supp. 2014) (offense of prostitution).

9

accepted. As a result, Chocolate Cherry was arrested. She was then identified as Dawn. Further investigation based on information Dawn provided led to a second interview, in which Dawn told the detective she and appellant were at the door of Anderson's apartment, appellant held a gun in his hand, he pointed the gun at Anderson, and she ran while appellant remained at the door with the gun. As she ran she heard a gunshot. Appellant thus asserts his identification as a suspect resulted from the initial undercover conversation with Dawn, in which an officer participated in the agreement for sex for money.[3]

Code of Criminal Procedure article 38.23(a) states, "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). Article 38.23 protects "a suspect's privacy, property, and liberty rights against overzealous law enforcement." *Wilson v. State,* 311 S.W.3d 452, 459 (Tex. Crim. App. 2010). It is substantive in nature, providing a remedy for a violation of those rights. *Id.* But a defendant has no standing to complain about evidence seized in violation of Texas law unless the defendant's rights were invaded by the seizure. *Chavez v. State,* 9 S.W.3d 817, 819 (Tex. Crim. App. 2000) (citing *Fuller v. State,* 829 S.W.2d 191, 201-02 (Tex. Crim. App. 1992), *overruled on other grounds by*

---

[3] Some penal statutes contain exceptions allowing law enforcement agents to engage in conduct that otherwise would be criminal. *See, e.g.,* TEX. HEALTH & SAFETY CODE ANN. § 481.062(a)(4) (West 2010); *Wilson v. State,* 311 S.W.3d 452, 463 (Tex. Crim. App. 2010) ("The Texas Legislature specifically exempted police officers who are acting in their official capacity from liability for the penal offense of possession of a controlled substance"). Appellant points out the prostitution statute contains no similar exception.

*Riley v. State,* 889 S.W.2d 290 (Tex. Crim. App. 1994)).  We find appellant has no standing to complain that the officer violated the prostitution statute.

*Fuller* is instructive here.  While detained in the county jail the defendant in *Fuller* made an audio recording and gave it to a fellow prisoner, Hall.  829 S.W.2d at 201.  Another prisoner took the recording from Hall and delivered it to jail authorities.  *Id.*  The trial court admitted the recording into evidence at the punishment phase of the defendant's capital murder trial to show his lack of remorse.  *Id.*  The defendant argued the recording should have been suppressed under article 38.23(a) because it was illegally taken from Hall.  *Id.*  The State countered that the defendant had no standing to contest the evidence.  The court agreed, concluding the defendant lacked standing "to challenge such illegality in the context of a criminal prosecution."  *Id.* at 202.  It explained that despite its broad language, article 38.23(a) does not "confer automatic third party standing upon all persons accused of crimes, such that they may complain about the receipt of evidence which was obtained by violation of the rights of others, no matter how remote in interest from themselves."  *Id.*

Thus under the facts of *Fuller:*

The justiciable injury suffered as a direct and immediate result of the illegality of which [the defendant] here complains was not his own.  The illegality, if any, was theft or conversion.  The victim, if any, was [Hall].  [She] may have a cognizable cause of action for conversion against someone.  The State of Texas may have a basis to prosecute someone for the criminal offense committed against [Hall].  But no one may sue, nor may the State of Texas prosecute, anyone for an injury to the [defendant] arising from the illegality about which he now complains, since he suffered no injury actionable under our law as a result of it.  No actionable wrong was visited upon [the defendant] as a result of the seizure.  For this reason we hold that he is also without standing to challenge such illegality in the context of a criminal prosecution . . . .

829 S.W.2d at 202.

11

In like manner, appellant does not explain how the undercover operation that resulted in Dawn's arrest for prostitution invaded his rights with respect to the charge of murdering Anderson. *See Gower v. State,* No. 02-10-00362-CR, 2011, Tex. App. LEXIS 8185, at *19-25 (Tex. App.—Fort Worth Oct. 13, 2011, no pet.) (mem. op., not designated for publication) (holding defendant lacked standing to complain under article 38.23(a) of evidence obtained from deputy medical examiner, allegedly acting in violation of Code of Criminal Procedure article 49.25 (a Class B misdemeanor), when defendant failed to identify a violation of his own rights resulting from the alleged violation); *Orr v. State,* 306 S.W.3d 380, 400 (Tex. App.—Fort Worth 2010, no pet.) (holding defendant had no standing to complain that testimony of unlicensed fire investigator should have been struck under article 38.23(a) when defendant did not allege a violation of her rights related to the investigator's alleged violation of law); *State v. Tyson,* 919 S.W.2d 900, 903 (Tex. App.—Eastland 1996, pet. refused) (finding defendant had no standing to complain under article 38.23 of evidence agents obtained through allegedly unlawful purchase of alcoholic beverages by cooperating minor as none of defendant's rights were violated by the transaction); *Stockton v. State,* 756 S.W.2d 873, 874 (Tex. App.—Austin 1988, no pet.) (finding evidence obtained by an undercover narcotics officer enrolled in high school, allegedly in violation of the Texas Education Code, was not subject to exclusion under article 38.23); *see also Andrews v. State,* 164 Tex. Crim. 1, 3, 296 S.W.2d 275, 276 (1956) (overruling a defendant's contention that testimony from a physician was inadmissible because the physician conducted a vaginal examination of a rape victim while not licensed to practice). Thus

appellant has no standing to complain, under article 38.23, of the admission of the challenged evidence.  Appellant's fourth issue is overruled.

Failure to Instruct on Voluntariness

By his second issue appellant complains the trial court erred by refusing to submit a requested instruction on voluntariness.   Appellant's proposed instruction provided:

> You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession.  Conduct is not rendered involuntary merely because the person did not intend the results of his conduct.
>
> You are instructed that it is your duty to consider the evidence of all relevant facts and circumstances surrounding the alleged shooting of Deans Anderson and the previous relationship existing between the accused and the deceased, if any, including by way of any third party, together with all relevant facts and circumstances going to show the condition of the mind of defendant Dustin Ryan Rhoades at the time of the alleged shooting, and you should place yourselves in the position of defendant Dustin Ryan Rhoades at the time in question and view the circumstances from his viewpoint alone.
>
> Thus, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Dustin Ryan Rhoades, did cause the death of Deans Anderson by shooting him with a gun, as alleged in the indictment, but you further believe from the evidence, or you have a reasonable doubt thereof, that the shooting was a result of an accidental discharge of the gun and was not the voluntary act or conduct of the defendant, you will acquit the defendant and say by your verdict "Not Guilty."

The court denied the requested instruction.

"When a defensive theory is raised by evidence from any source and a charge is properly requested, it must be submitted to the jury."  *Woodfox v. State,* 742 S.W.2d 408, 409 (Tex. Crim. App. 1987) (quoting *Gavia v. State,* 488 S.W.2d 420, 421 (Tex.

13

Crim. App. 1972)). A trial court must submit an instruction on every defensive issue raised by the evidence, "regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony is not worthy of belief." *Rogers v. State,* 105 S.W.3d 630, 637 (Tex. Crim. App. 2003) (concerning voluntariness of conduct as defensive issue). The evidence must support a rational jury finding on each element of the defense. *Shaw v. State,* 243 S.W.3d 647, 658 (Tex. Crim. App. 2007).

"A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." TEX. PENAL CODE ANN. § 6.01(a) (West 2011). "Voluntariness," as applied by section 6.01(a), refers only to one's own physical body movements. *Rogers,* 105 S.W.3d at 638 (citing *Rashann Maurice Brown v. State,* 89 S.W.3d 630, 633 (Tex. Crim. App. 2002)). "If those physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus, that movement is not voluntary." *Id.* (citing Tex. Penal Code § 6.01, Practice Commentary).

> [B]efore criminal responsibility may be imposed, the actor's conduct must "include[ ] either a voluntary act or an omission when the defendant was capable of action." The operative word under Section 6.01(a), for present purposes, is "include." Both the Model Penal Code comments and the Practice Commentary to the 1974 Texas Penal Code stress that the "voluntary act" requirement does not necessarily go to the ultimate act (e.g., pulling the trigger), but only that criminal responsibility for the harm must "include an act" that is voluntary (e.g., pulling the gun, pointing the gun, or cocking the hammer).

*Farmer v. State,* 411 S.W.3d 901, 905-06 (Tex. Crim. App. 2013) (quoting *Rogers,* 105 S.W.3d at 638).

Here, according to appellant, he armed himself with a .357 revolver which he carried in his hand as he and Dawn approached Anderson's apartment door. Appellant stepped up to the door with his gun pointed at Anderson and demanded money. Based on appellant's own version of the occurrence he voluntarily engaged in an act leading to the shooting of Anderson. That is, he carried his loaded revolver and pointed it at Anderson. No evidence suggests those actions were involuntary. "All that is necessary to satisfy Section 6.01(a) of the Texas Penal Code is that the commission of the offense *included* a voluntary act." *Farmer,* 411 S.W.3d at 907 (emphasis in original). Therefore, the trial court did not err by refusing appellant's request for a voluntariness instruction. *See George v. State,* 681 S.W.2d 43 (Tex. Crim. App. 1984) (finding a person "voluntarily engages in conduct when the conduct *includes, inter alia,* a voluntary act and its accompanying mental state. That such conduct also includes an involuntary act does not necessarily render engaging in that conduct involuntary" (footnote omitted, emphasis in original)); *Conroy v. State,* 843 S.W.2d 67, 72 (Tex. App.—Houston [1st Dist.] 1992, no pet.) ("Even assuming that the discharge of the weapon was unintended, the intentional pointing of a weapon is a voluntary act and the resulting death is imputable to the [defendant]"); *Arroyo v. State,* No. C14-92-00540-CR, 1994 Tex. App. LEXIS 459, at *11 (Tex. App.—Houston [14th Dist.] Mar. 10, 1994, no pet.) (not designated for publication) (explaining instruction on voluntariness not required if defendant engaged in single voluntary act and required mental state even though involuntary act may also have constituted part of overall act). *Cf. Farmer,* 411 S.W.3d at 906 ("Thus, a voluntary act that comprised a portion of the commission of the offense

15

is sufficient to satisfy the requirement of Section 6.01(a), even if that voluntary act was accidental or the consequences of that act were unintended").

Appellant's second issue is overruled.

Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

Pirtle, J., concurring.

Print this page

# Case # PD-1350-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 11/16/2015 09:12:14 PM |
| Case Number | PD-1350-15 |
| Case Description | |
| Assigned to Judge | |
| Attorney | James Wooldridge |
| Firm Name | James E. Wooldridge |
| Filed By | James Wooldridge |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.09 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $3.00 |
| Total Provider Tax Fees | $0.25 |
| Grand Total | $3.34 |

## Payment

| | |
|---|---|
| Account Name | James Wooldridge |
| Transaction Amount | $3.34 |
| Transaction Response | |
| Transaction ID | 12811188 |
| Order # | 007854441-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | Rhoades |
| Comments | |
| Status | Rejected |

### Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

### Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 11/17/2015 02:22:40 | The petition for discretionary review does not contain a certification in compliance with T.R.A.P. 9.4(i)(3); it exceeds the word count limit of 4500 words indicating that |

PM | there are 11,549 words in the document. You have ten days to file a corrected petition.

## Documents

| | | |
|---|---|---|
| *Lead Document* | Petition for Discretionary Review - Rhoades.pdf | [Original] |